UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| COMMERCIAL METAL FORMING, | ) | CASE NO. 4:11cv228 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| UTILITIES OPTIMIZATION GROUP, LLC, | ) | |
| | ) | |
| DEFENDANT. | ) | |

This matter comes before the Court upon the motion (Doc. 13) of Defendant Utilities Optimization Group ("Defendant" or "UOG") to dismiss or, in the alternative, to transfer venue. After briefing was complete on the motion to dismiss, Plaintiff Commercial Metal Forming ("Plaintiff" or "CMF") filed a motion for leave to supplement its opposition brief. (Doc. 17). Defendant filed a response (Doc. 19) to Plaintiff's motion to supplement, wherein Defendant basically reiterated its basis for seeking dismissal or transfer of this action in light of the supplemental materials. Plaintiff's motion to supplement is **GRANTED** and Defendant's motion to dismiss is ripe for disposition. For the reasons that follow, Defendant's motion to dismiss **DENIED** and its alternative motion to transfer venue is **GRANTED**.

I.   BACKGROUND

On February 1, 2011, Plaintiff CMF filed the instant breach of contract action against Defendant UOG seeking damages and declaratory relief. UOG seeks to have this matter dismissed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure on the basis that this Court lacks personal jurisdiction over it, either general or specific. In the alternative, UOG

argues that the matter should be transferred to the United States District Court for the Northern District of Texas under 28 U.S.C. § 1391(a)(2), as it argues that venue in this district is improper.

Plaintiff CMF produces tank heads and tank accessories for different markets, including "air receivers, petrochemical, LP Gas, oil field, construction equipment, rail and truck transportation, oil and gas separation, food processing, and filtration." (Doc. 13-1 at 2.) CMF has its corporate headquarters in Youngstown, Ohio, but operates a satellite office in Saginaw, Texas.[1] According to CMF, its Youngstown office has direct control over sales, market pricing, accounting, and all engineering functions.

Defendant UOG entered into a contract (the "Agreement") with CMF for the production of tank heads, which according to CMF were manufactured at its Youngstown headquarters (Compl. ¶ 7.) UOG asserts that it entered into the Agreement with CMF because of its contacts with CMF's representative in Saginaw, Texas, where it claims the tank heads were actually manufactured. (Doc. 13-1 at 2-3.) UOG has provided a declaration by its President and CEO, Joseph D'Amico, attesting that the tank heads were made in Texas and that UOG does not do business or maintain contacts in Ohio. (Doc. 13-2 at 1-2.) Instead, Mr. D'Amico avers that UOG has its corporate headquarters in Pascagoula, Mississippi, and conducts operations in New Orleans, Louisiana. Accordingly, it requests that the Court dismiss this action for want of personal jurisdiction, or, in the alternative, it argues that venue in the Northern District of Ohio is improper, and that the case should be dismissed or transferred to the Northern District of Texas.

CMF asserts in opposition that it routinely did business with UOG without a written contract, even prior to the transaction at issue in this matter, and that the governing terms

---

[1] UOG asserts in its motion that CMF is actually a Delaware corporation with its business address listed in Youngstown, Ohio. (Doc. 13-1 at 2, n. 1.)

were set forth on the back of invoices it submitted to UOG. (Doc. 15 at 2.) Those terms, CMF argues, clearly provide that any disputes between the parties would be governed by Ohio law. *Id.* UOG responds that, with respect to this transaction, it did not receive the invoices from CMF until after the parties had executed the Agreement and the tank heads (which allegedly did not conform to UOG specifications) had been delivered; and, therefore, any terms and conditions on the invoices were not part of the contract.[2] (Doc. 16 at 5-6.) Further, UOG argues that a choice of law provision does not constitute a venue provision.

II. **LAW & ANALYSIS**

To support the exercise of jurisdiction over a defendant, a plaintiff must establish that (1) personal jurisdiction is authorized by Ohio state law; and (2) the exercise of jurisdiction is in accordance with the Due Process Clause of the Fourteenth Amendment. *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991). While UOG has moved for the Court to dismiss or transfer this matter, CMF is the party seeking this Court's assertion of personal jurisdiction over UOG.

> [T]he party seeking assertion of *in personam* jurisdiction bears the burden of showing that such jurisdiction exists. […] When, however, a district court rules on a jurisdictional motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(2) without conducting an evidentiary hearing, the court must consider the pleading and affidavits in a light most favorable to the plaintiff […]. To defeat such motion, [the party seeking to assert jurisdiction] need only make a prima facie showing of jurisdiction.

*Brunner v. Hampson*, 441 F.3d 457, 462 (6th Cir. 2006) (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1261-62 (6th Cir. 1996)) (alterations in *Brunner*); *see also*, *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). The Court, however, is not precluded from considering undisputed factual representations made by the defendant that are consistent with those of the plaintiff. *Kerry Steel, Inc. v. Paragon Indus., Inc.,* 106 F.3d 147, 153 (6th Cir. 1997). In the case at hand,

---

[2] UOG does not address whether a course of dealing exists between the parties

3

the Court will decide this issue upon the written submissions, and, therefore, will proceed in its analysis by viewing the evidence in a light most favorable to CMF. *See Bird*, 289 F.3d at 871.

### A. Ohio's Long-Arm Statute

Ohio's long-arm statute provides, "A Court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's (1) [t]ransacting any business in this state; [or] (2) contracting to supply services or goods in this state." O.R.C. § 2307.382(A)(1). The phrase "transacting business" has a broader meaning than "contracting," and encompasses prosecuting negotiations, carrying on business, and having dealings. *Ky. Oaks Mall Co. v. Mitchell's Formal Wear*, 53 Ohio St. 3d 73, 75 (1990). The statute also provides the additional requirement that "only a cause of action arising from acts enumerated in this section may be asserted against [the defendant]." The statute has less reach than the Due Process Clause. *Brunner v. Hampson*, 441 F.3d 457, 466 (6th Cir. 2007). While a "but-for" relationship between a plaintiff's claim and the defendant's conduct in Ohio satisfies the U.S. Constitution, Ohio's statute requires a "proximate cause" relationship. *Id.*; *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 433 (6th Cir 2007).

The Sixth Circuit's approach in *Burnshire* provides guidance on this issue. There, the court examined which of the defendant's alleged contacts met the test for the Ohio statute. 198 F. App'x at 433. After it found that only some of the contacts satisfied the proximate cause standard, it applied the due process analysis solely to those contacts. *Id. See also Int'l Techs. Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 393 (6th Cir. 1997) (disregarding contacts between the defendant and the forum state related to a prior contract between the plaintiff and

defendant as irrelevant and applying the due process analysis only to those contacts from which the cause of action could have arisen).

### B. Due Process Considerations

"In analyzing the due process limits of personal jurisdiction, a distinction is made between 'general' jurisdiction and 'specific' jurisdiction." *Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 981 (6th Cir. 1992) (quoting *Third Nat'l. Bank in Nashville v. WEDGE Grp., Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989)). General jurisdiction exists over a defendant when his or her "contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Third Nat'l Bank,* 882 F.2d at 1089. Here, CMF merely asserts that general jurisdiction over UOG exists, but makes not actual argument on the point. The Court finds that UOG does not maintain continuous and systematic contacts sufficient to sustain general jurisdiction, as will become clear in the discussion of specific jurisdiction.

Specific jurisdiction exists when a plaintiff's claims arise out of or relate to a defendant's contacts with the forum state. *Kerry Steel*, 106 F.3d at 149; *Conti*, 977 F.2d at 981. In *Southern Machine Co. v. Mohasco Indus., Inc.,* the Sixth Circuit established a three-part test for determining whether specific jurisdiction exists, which incorporates the due process concerns of the defendant:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

401 F.2d 374, 381 (6th Cir. 1968).

### 1. Purposeful Availment

The purposeful availment requirement is the "sine qua non" for personal jurisdiction. *Southern Machine*, 401 F.2d at 381-82. It "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). It also "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random, fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). To satisfy the requirement, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

The Sixth Circuit has adopted Justice O'Connor's "stream of commerce plus" approach to purposeful availment as articulated in *Asahi Metal Indus. Co., Ltd. v. Super. Ct.*, 480 U.S. 102 (1987). *Bridgeport Music v. DM Records, Inc.*, 327 F.3d 472, 480 (6th Cir. 2003). In *Asahi*, the Supreme Court examined the exercise of personal jurisdiction in California over a foreign manufacturer that sold a valve to another foreign company that incorporated the valve into a tire and sold it in California. Justice O'Connor's plurality opinion explained, "[T]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Id.*, 480 U.S. at 112. In determining whether the facts of a case meet this "plus" requirement, the Court explained,

> Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in

>  the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State.

*Id.*

The Sixth Circuit's fact-specific precedents regarding purposeful availment provide additional guidance. In *Kerry Steel, Inc. v. Paragon Indus.*, 106 F.3d 147 (6th Cir. 1997), a Michigan steel manufacturer who purchased steel from an Oklahoma corporation brought suit for breach of contract. The plaintiff had solicited the transaction through a sales call and negotiated with the defendant via fax and telephone to finalize the transaction. The defendant called and sent faxes to the plaintiff in Michigan, sent purchase orders to Michigan, and sent some of its payments to Michigan. The Sixth Circuit found these contacts insufficient to confer personal jurisdiction and affirmed the district court's dismissal. The court explained that, where a defendant purchases products in response to a plaintiff's unsolicited sales call, the defendant has not "reached out" to the forum state. The Sixth Circuit deemed the defendant's telephone calls and faxes sent to the forum state "random, fortuitous and attenuated," and therefore unable to create purposeful availment. *Id.* (citing *Scullin Steel Co. v. Nat'l Ry. Utilization Corp.*, 676 F.2d 309, 314 (8th Cir. 1982) ("The use of interstate facilities (telephone, the mail), the making of payments in the forum state, and the provision for delivery within the forum state are secondary or ancillary factors and cannot alone provide the 'minimum contacts' required by due process.").

The court also noted that the agreement between the parties represented "nothing more than an isolated transaction." *Id*. Compare *Asahi*, 480 U.S. at 110. ("[I]f the sale of a product of a manufacturer or distributor is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its

allegedly defective merchandise has there been the source of injury to its owners or to others.")

The Sixth Circuit summarized, as follows:

> What the case at bar comes down to, as we see it, is that Paragon, in response to an unsolicited sales call, ordered products from a Michigan seller and negotiated with the seller via fax and telephone to finalize the transaction. This does not constitute a purposeful availment of transacting business in Michigan, so as to invoke the benefits and protections of Michigan law. To hold otherwise would be to offend against the "traditional notions of fair play and substantial justice" of which the Supreme Court spoke in *International Shoe*.

*Kerry Steel*, 106 F.3d at 152.

Another example of the Sixth Circuit's treatment of the purposeful availment requirement is found in *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). There, the court found that an out-of-state sales representative for an Ohio cookware company, Calphalon, could not be sued in Ohio because he did not purposefully avail himself of the benefits of Ohio law. *Id*. Rowlette, a Minnesota resident, entered a contract to promote the sale of Calphalon's products in other states, to inform Calphalon of market conditions, and to develop sales plans for its customers. He regularly corresponded with Calphalon by telephone and made two physical visits to Ohio. The Sixth Circuit found that Rowlette's contacts with the state were fortuitous and random, and thus could not sustain the exercise of personal jurisdiction. "The mere existence of a contract is insufficient to confer personal jurisdiction." *Id*. at 723. The court also explained that Rowlette's physical visits in the forum state occurred solely because Calphalon had chosen to locate itself there, not because the defendant sought to "further its business and create continuous and substantial consequences there." *Id*. at 723.

In within action, CMF's two arguments regarding UOG's contacts with Ohio are that UOG did business with an Ohio company and that the invoices provided to UOG included a choice of law provision identifying Ohio law as that which would govern any contract disputes.

In analyzing these arguments in light of the case law outlined above, the Court finds that Ohio lacks specific jurisdiction over UOG.

First, the evidence that UOG knew CMF was an Ohio company is thin. CMF points to the fact that the contact person with whom UOG communicated (whom UOG believed to be located in Texas) was actually located in Florida and reported to CMF's Youngstown office. It provides no evidence that UOG would have known to whom the representative reported. CMF asserts that its decision-making center was in its Youngstown office, and that the invoices sent to UOG were issued from the Youngstown office and remittance should have been made to Youngstown or to Chicago, at CMF's bank. CMF has submitted numerous invoices, not one of which provides any evidence that its operations are based in Ohio, other than telephone numbers with Ohio area codes.[3] The return address on the invoices is a Chicago address. No further identifying marks appear anywhere on the invoices.

The only other evidence relied upon by CMF is the choice of law provision that appears on the back of its invoices, which states that "[t]he laws of the State of Ohio govern this agreement." *See, e.g.*, Doc. 15-1 at 5. A choice of law provision is not, however, a forum selection clause. Courts have consistently held that a choice of law provision is not dispositive of the issue of a court's jurisdiction over a party. *Calphalon*, 228 F.3d at 722-23 (concluding that, although defendant was aware of choice of law provision selecting Ohio law as governing law, this knowledge alone was insufficient to confer jurisdiction, and that it is the quality and not the quantity of a parties' contacts that determine whether jurisdiction exists);[4] *see also Agrashell,*

---

[3] The Court takes judicial notice of this fact. The telephone numbers are not identified on the invoices as Ohio telephone numbers, but they begin with area code (330), which the Court, sharing that area code, is aware is an Ohio area code. Fed. R. Evid. 201(b)(1).

[4] The *Calphalon* decision also notes that it is more important to consider the quality of the parties' relationship than the duration of that relationship in determining the nature of the contacts. *Calphalon*, 228 F.3d at 722. CMF has

*Inc. v. Bernard Sirotta Co.*, 344 F.2d 583, 588 (2d Cir. 1965). Based upon these facts and the case law in this Circuit, the Court finds that Plaintiff has failed to establish that Defendant purposefully availed itself of the benefits and protections of Ohio's laws.

### 2. Remaining Factors

Under *Southern Machine*, the next requirement for finding personal jurisdiction is that the cause of action must arise from the defendant's activities in the forum state. *Southern Machine*, 401 F.2d at 381-82. The Sixth Circuit has stated that its *Southern Machine* decision "made clear that the second criterion does not require that the cause of action formally 'arise from' [a] defendant's contacts with the forum; rather, this criterion requires only 'that the cause of action, of whatever type, have a substantial connection with the defendant's in-state activities.'" *Third Nat'l Bank in Nashville v. WEDGE Grp. Inc.*, 882 F.2d 1087, 1091 (6th Cir. 1989) (citing *Southern Machine*, 401 F.2d at 384 n. 27).

The Court has already held that UOG did not purposely avail itself of Ohio's laws in this matter, and has therefore failed to find the "sine qua non" of personal jurisdiction. *See Southern Machine*, 401 F.2d 381-82. In such a situation, the Sixth Circuit has held that there is no reason to continue the inquiry as to the second or third factors, particularly in light of the fact that the plaintiff has not provided evidence of *any* in-state activities. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1275 (6th Cir. 1998). In *Dean*, the Sixth Circuit held as to the second factor that, due to the lack of purposeful availment, "there [was] no reason to even attempt to analyze [the defendant's] 'activities'" in the forum state. *Id*. As to the third factor, then, the court held that it would not pursue the "complex inquiry" required because "the lack of purposeful availment is dispositive." *Id.*; *see also Calphalon*, 228 F.3d

---

asserted that the parties had been contracting for the manufacture and purchase of tank heads for several years prior to the contract at issue here. No better evidence of UOG's purposeful availment has been produced regarding those earlier contracts than was produced in support of jurisdiction over UOG in this dispute.

The Court holds likewise in this matter. CMF has provided no evidence of purposeful availment. Without such evidence, it is a violation of due process to compel UOG to proceed in this state. Accordingly, this Court lacks personal jurisdiction over UOG. As outlined below, however, the Court concludes that transfer, rather than dismissal, is warranted in this case.

### C. Venue transfer

Defendant has moved in the alternative for a transfer of venue under 28 U.S.C. § 1404(a). The Court cannot order such a transfer if it lacks personal jurisdiction over the defendant. *Martin v. Stokes*, 623 F.2d 469, 474 (6th Cir. 1980). As a further alternative, Defendant has moved under 28 U.S.C. § 1406(a), which provides that a court may dismiss or, "if in the interest of justice," transfer a matter to another district if venue is improper in the district in which it is filed. 28 U.S.C. § 1406(a). "The decision whether to dismiss or transfer is within the district court's sound discretion […]." *First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 262 (6th Cir. 1998) (citing *Friend v. Sowders*, 7 F.3d 233, 1993 WL 389813 at *2 (6th Cir. Oct. 1, 1993); *Hapaniewski v. Chi. Heights*, 883 F.2d 576, 579 (7th Cir. 1989)). "[T]ransfer is generally perceived to further the interests of justice more than dismissal." *Allied Sound, Inc. v. Dukane Corp.*, 934 F. Supp. 272 (M.D. Tenn. 1996) (citing *Nation v. United States Gov't*, 512 F. Supp. 121, 126 (S.D. Ohio 1981)). "As such, 'doubts should be resolved in favor of preserving the action, particularly where it appears that venue may be properly laid in the proposed transferee district.' " *Id.* (quoting *Nation*, 512 F. Supp. at 126-127).

In this instance, the interests of justice require transfer of this action to the United States District Court for the Northern District of Texas,[5] where it appears that venue may be properly laid. As set forth above, this Court lacks personal jurisdiction over UOG because, among other things, UOG did not purposefully avail itself of the privilege of doing business in Ohio, and did not intentionally conduct business in Ohio. In fact, UOG did no business in Ohio. Instead, UOG conducted business with a company doing business out of Texas, and the work of producing the materials at issue was performed in Texas.

Furthermore, CMF operates an office in Texas and has connections to that forum sufficient to establish personal jurisdiction.[6] While CMF has attempted to argue that it is unfair to consider only the convenience of UOG, the Court is not doing so in transferring this action. While CMF has contacts with Texas[7] and can produce some number of its witnesses and exhibits from Texas, UOG has none with Ohio, and cannot locate any of its witnesses or exhibits here. CMF's argument is entirely without merit, particularly in light of the fact that, as set forth above, UOG never attempted to avail itself of the protections of Ohio's laws.

Finally, the Court is aware that UOG is already pursuing litigation against CMF in the Northern District of Texas. Given the fact that the Court lacks personal jurisdiction over UOG and the fact that CMF clearly has connections to the Northern District of Texas, the Court

---

[5] The Court, pursuant to Fed. R. Evid. 201(b)(2), has taken judicial notice of the fact that, on April 1, 2011, UOG filed an action against CMF in the Northern District of Texas. *Utilities Optimization Group, LLC v. Commercial Metal Forming & Steel Forming, Inc.*, No. 3:11cv679 (N.D. Tex.).

[6] What is more, the Court takes judicial notice of the fact that on June 13, 2011, in the action in the Northern District of Texas, see note 6, *supra*, CMF filed a motion to dismiss for improper venue pursuant to Fed. R. P. 12(b)(3), but has not moved to dismiss the action for lack of personal jurisdiction. Thus, pursuant to Fed. R. P. 12(h)(1)(A), it appears to this Court that CMF has waived any objection to the that court's exercise of personal jurisdiction over it in that action.

[7] The Court would also point out that, unlike CMF, UOG does not have an office in Texas (and only has offices in Mississippi and Louisiana), but has instead sought to pursue this action in Texas because it recognizes that much of the activity in this business transaction occurred in Texas.

finds no prejudice to either party in transferring the matter to that district. *See Zandee v. Colisto*, 505 F. Supp. 180, 182 (W.D. Mich. 1981).

### III. CONCLUSION

For the reasons set forth herein, Defendant's motion is **GRANTED** in part and **DENIED** in part. Defendant's motion to dismiss is **SUSTAINED** as far as it alleges this Court lacks personal jurisdiction over it; however, the Court **DENIES** Defendant's request for dismissal. Instead, Defendant's motion to transfer this litigation pursuant to 28 U.S.C. § 1406(a) is **GRANTED**. The Court hereby transfers this action to the United States District Court for the Northern District of Texas, Dallas Division.

**IT IS SO ORDERED**.

Dated: October 19, 2011

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**